UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v

KENNETH ROY THOMAS,

    Defendant-Movant.

_____/

Case No. 1:02-cr-229

HON. JANET T. NEFF

## **OPINION**

Pending before this Court is Kenneth Roy Thomas' pro se motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed upon him (Dkt 110). The government filed a response in opposition (Dkt 113). For the following reasons, the motion is denied.

### I. BACKGROUND

On January 29, 2003, Thomas was found guilty by a jury of bank robbery in violation of 18 U.S.C. § 2113(a) and (f) (Dkt 40). On May 19, 2003, the Honorable David W. McKeague sentenced Thomas, a career offender, to 240 months in prison, the statutory maximum for bank robbery; a five-year term of supervised release; a fine of $4,500.00; and a special assessment of $100.00 (Dkt 49). On May 21, 2003, Judge McKeague entered an Amended Judgment, decreasing the term of supervised release to three years (Dkt 52). Thomas filed an appeal with the United States Court of Appeals for the Sixth Circuit, which affirmed the Amended Judgment of the district court (Dkt 62). *United States v. Thomas*, 116 F. App'x 727 (6th Cir. 2004). Thomas filed a petition for writ of

certiorari, which the United States Supreme Court granted. The Supreme Court vacated the Sixth Circuit's decision and remanded the case for further consideration in light of *United States v. Booker,* 543 U.S. 220 (2005) (Dkt 66). *United States v. Thomas*, 543 U.S. 1116 (2005). The Sixth Circuit vacated the Amended Judgment of the district court and remanded the case to the district court for resentencing in accordance with *Booker* (Dkt 67).

On remand, the case was transferred to the Honorable Robert H. Cleland pursuant to Administrative Order No. 05-102 (Dkt 68). On February 2, 2006, Judge Cleland resentenced Thomas to 240 months in prison; a five-year term of supervised release; a fine of $4,500.00; and a special assessment of $100.00 (Dkt 77). Thomas again appealed his sentence. On August 13, 2007, the Sixth Circuit vacated Thomas' Amended Judgment and remanded for resentencing (Dkt 90).

On December 6, 2007, Judge Cleland again imposed a sentence of 240 months in prison; a five-year term of supervised release; a fine of $4,500.00; and a special assessment of $100.00 (Dkt 103). Thomas again appealed his sentence. On July 21, 2009, the Sixth Circuit affirmed the district court's sentence of 240 months in prison but reversed the court's imposition of a five-year term of supervised release, remanding the case to the district court for resentencing in regard to the latter issue (Dkt 106).

The matter was transferred to the undersigned pursuant to Administrative Order No. 08-169 (Dkt 105). On remand, the government stipulated to a three-year term of supervised release (Dkt 108). This Court entered an Amended Judgment on August 18, 2009, which, in pertinent part, modified the prior Amended Judgment to provide that upon release from imprisonment, Thomas shall be on supervised release for a term of three years (Dkt 109).

On August 17, 2010, Thomas filed this § 2255 motion, raising various claims of ineffective assistance of counsel (Dkts 110-112). The government filed a response to the motion on September 17, 2010 (Dkt 113). Thomas did not file a reply.

## II. ANALYSIS

### A. Section 2255 Motion

A prisoner who moves to vacate his sentence under 28 U.S.C. § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). To prevail on a § 2255 motion, the movant must demonstrate "the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States,* 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2003)).

As a general rule, claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review; however, an ineffective assistance of counsel claim is not subject to the procedural default rule. *Massaro v. United States,* 538 U.S. 500, 504 (2003). An ineffective assistance of counsel claim may be raised in a collateral proceeding under § 2255, whether or not the movant could have raised the claim on direct appeal. *Id.*

In an action to vacate or correct a sentence, a court is generally required to grant a hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No evidentiary hearing is required if the movant's allegations "cannot be

3

accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States,* 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999)). The files and records in this case conclusively show that Thomas is not entitled to relief under 28 U.S.C. § 2255. Accordingly, no evidentiary hearing is required to resolve the merits of the pending motion.

B. Ineffective-Assistance-of-Counsel Claims

Thomas argues that both his trial attorney and his appellate attorney rendered him ineffective assistance of counsel. Thomas' arguments are reviewed under the two-prong test from *Strickland v. Washington*, 466 U.S. 668 (1984), which the Supreme Court established to evaluate ineffective assistance of counsel claims. *Valentine v. United States*, 488 F.3d 325, 338 (6th Cir. 2007).

To establish ineffective assistance of counsel, a movant must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the movant, resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. The movant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana,* 350 U.S. 91, 101 (1955)). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. Even if a court determines that counsel's performance was outside that range, the movant is not entitled to relief if he was not prejudiced by counsel's error. *Id.* at 691. To establish prejudice, the movant must show that counsel's errors were "so serious as to deprive the

4

defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. *See also Lockhart v. Fretwell,* 506 U.S. 364, 369 (1993).

To determine whether counsel was ineffective for failing to raise an allegedly meritorious issue on appeal, the court must first assess the strength of the claim appellate counsel failed to raise. *McFarland v. Yukins*, 356 F.3d 688, 700 (6th Cir. 2004). As the Sixth Circuit explained in *McFarland*, "[c]ounsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Id.* Courts are not to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every colorable claim suggested by a client. *Jones v. Barnes,* 463 U.S. 745, 754 (1983).

Thomas argues that his trial attorney was ineffective because the attorney failed to challenge the manner in which the government presented certain pieces of evidence. Specifically, Thomas contends that the government (1) misrepresented the amount of money found on Thomas, (2) misrepresented the red stains evident in pictures of Thomas' hands as stains resulting from the dye pack placed by the bank employee, (3) misrepresented the relevance of a firearm in a prior case and a crack pipe found on Thomas in this case, and (4) misrepresented a photograph of Thomas so that it matched a sketch of the bank robber. Thomas argues that his appellate counsel was also ineffective in failing to raise these issues on appeal.

The record does not support Thomas' arguments. First, regarding the amount of money, Thomas' trial counsel elicited testimony from the bank teller that the denominations she gave the robber were hundreds, fifties, and tens (Trial Tr, 133). Trial counsel elicited contrasting testimony from the police officer that the money retrieved from Thomas' jail cell was in denominations of

5

hundreds, tens, and fives (*id.,* 195-96). During closing argument, Thomas' trial counsel emphasized that the money found on Thomas was "not the same money" taken from the bank because the bank teller testified she did not give the robber small denominations and "[t]he money that's [found on Thomas] in the jail ... is fives and tens" (*id.*, 234-35). Thomas' trial attorney opined that the amount of money found created a reasonable doubt as to Thomas' guilt that the jury should not be "too late" in finding (*id.*).

Regarding the red dye, as Thomas concedes (Dkt 110 at 2), his trial attorney successfully objected at trial to the witness' characterization of the red stains on Thomas' hands evident in the photographs as stains derived from "dye" (Trial Tr, 64). Defense counsel also argued in closing that there was no proof that the red stains were caused by dye rather than simply the "red [veins] on people's hands" and that, in any event, there were no red stains on Thomas' pants or T-shirt (*id.,* 232-33).

The matter of the firearm used in a 1982 robbery and the crack pipe found in Thomas' pants pocket during the arrest for this robbery were topics raised by the government during cross-examination of Thomas, who elected to testify at trial. Thomas denied using a firearm during the prior robbery and testified that he did not have a crack pipe in his possession when arrested in this case (Trial Tr, 215-16, 218-19). Although Thomas' trial attorney did not object to the references to the weapon or the crack pipe during Thomas' cross-examination, when the government recalled the police officer who located the crack pipe on Thomas, Thomas' attorney questioned the officer about why his report did not contain a reference to the crack pipe (Trial Tr, 220-21).

Last, regarding the comparison of still photographs taken from the bank's surveillance video and photographs taken of Thomas after his arrest, Thomas' trial attorney cross-examined the FBI

6

agent and a witness in the bank about the differences in appearance and clothing between the two sets of photographs (Trial Tr, 49-52, 157-62). Trial counsel later argued that the differences created doubt about whether the investigators and the witness were mistaken in identifying Thomas as the bank robber (*id.,* 229-35).

To the extent Thomas also challenges his attorney's handling of the trial testimony of his two cell mates, Robert Muller and Quan Williams, as testimony that was "not beleaivable [sic] without some asst. from the govt" (Dkt 110 at 4), this argument also fails because his trial attorney adequately challenged the veracity of both government witnesses during cross-examination. Specifically, Thomas' trial attorney followed a line of questioning with Muller that was intended to elicit any promises of leniency made to him (Trial Tr, 105-06), and he questioned Williams about a fight he had had with Thomas in the cell (*id.* 112-13). Indeed, Thomas himself testified about his fight with Williams, opining that "[h]e didn't like me, I didn't like him" (*id.* 214). Trial counsel returned to the topic during closing argument, contending that Muller did not credibly testify because "[i]f Muller cooperates in this case, he's going to get some time off his sentence" (*id.,* 233). Similarly, trial counsel contended that "the real reason Mr. Williams is here is because Mr. Thomas beat him up in jail" and "[t]hey both have axes to grind" (*id.*).

In sum, Thomas' arguments do not show either that his trial counsel's performance in challenging the government's presentation of evidence fell below an objective standard of reasonableness or that counsel's performance prejudiced him. Thomas has failed to show that his attorney provided him ineffective assistance at trial. Consequently, Thomas has concomitantly failed to show that his appellate attorney provided him ineffective assistance by failing to present

these issues on appeal. "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001).

## III. CERTIFICATE OF APPEALABILITY

Having determined that none of Thomas' arguments merit granting his motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed upon him, this Court may also determine whether to issue a certificate of appealability. *See Castro v. United States,* 310 F.3d 900, 901-03 (6th Cir. 2002).

A certificate of appealability should issue if the movant has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Thomas' claims under the *Slack* standard.

To warrant a grant of the certificate, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. The Court holds that reasonable jurists could not find this Court's assessment of Thomas' ineffective-assistance-of-counsel claims debatable or wrong. Therefore, the Court denies Thomas a certificate of appealability as to each issue presented.

## IV. CONCLUSION

For the foregoing reasons, this Court denies the Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Dkt 110) and denies a certificate of appealability as to each issue asserted therein.

An Order consistent with this Opinion will be entered.


Date: May 2, 2011              /s/ Janet T. Neff
                               JANET T. NEFF
                               United States District Judge